## McKinstry's Estate.

186

Argued January 29, 1929. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.

*Walter K. Sharpe,* with him *John McD. Sharpe,* for appellant.—Restrictions may be imposed by a testator upon the time of payment of a legacy or upon the method or manner of payment without affecting the absolute character of the gift and such legacy is vested in the legatee notwithstanding such restrictions and if such legatee dies before the time of payment arrives the legacy will nevertheless pass to his personal representa-

tive: Roberts's App., 59 Pa. 70; Cooper v. Scott, 62 Pa. 139; Sproul's App., 105 Pa. 438; Yost's Est., 134 Pa. 426; Cressler's Est., 161 Pa. 427; Middleton's Est., 212 Pa. 119.

Active trusts may be created by a testator and restrictions imposed as to the time or manner of payment either during the life of the trustee or during the life of the beneficiary without affecting the absolute character of the gift embraced in the trust and the whole beneficial interest may nevertheless vest in the beneficiary notwithstanding such trust and the restrictions as to payment imposed, and such beneficial interest in the entire fund will vest in the beneficiary immediately on the death of the testator if the whole will indicates that the testator so intended: Spring's Est., 216 Pa. 529; Knight's Est., 235 Pa. 149; Schuldt v. Trust Co., 270 Pa. 360; Gill's Est., 293 Pa. 199; Millard's Est., 87 Pa. 457.

Thus an absolute gift of the entire income of a fund, without restriction to the life of the first taker and without a gift upon the death of the first taker of the principal to another party, is construed to be a gift of the fund itself: Beilstein v. Beilstein, 194 Pa. 152; Shower's Est., 211 Pa. 297; Bruch's Est., 185 Pa. 194; Mifflin's Est., 232 Pa. 25.

*Edwin D. Strite,* with him *J. R. Ruthrauff,* for appellees.—There is not a word in this will which affirmatively manifests any intention that, after the death of Claudius B. McKinstry, his heirs or representatives, legatees or devisees, should receive the estate rather than the heirs or next of kin of the original testatrix; the contrary appears from the fact that it was limited to the care and pressing necessities of Claudius B. McKinstry: Reisher's Est., 261 Pa. 223; Kelley's Est., 253 Pa. 466; Nevin's Est., 192 Pa. 258.

The absence of a limitation over does not indicate that testatrix intended to give an estate in fee to Claudius B. McKinstry but is merely an indication that she

elected to change the course of descent only in so far as she expressly provided in her will: Wolfe's Est., 44 Pa. C. C: R. 603; Shaner v. Wilson, 207 Pa. 550; Reynold's Est., 175 Pa. 257.

If the income is limited for life, or it is apparent from the whole will that the testator intended to sever the produce from its source, the legatee takes only a life estate: Bacon's Est., 202 Pa. 535; Dull's Est., 217 Pa. 358; McGee's Est., 20 Pa. Dist. R. 589; Bently v. Kauffman, 86 Pa. 99.

OPINION BY MR. JUSTICE SADLER, March 18, 1929:

Mary S. McKinstry died testate on October 16, 1915, and her will, bearing date some three years previous thereto, was duly probated. Her next of kin were two brothers and children of others deceased. The typewritten portion was supplemented by an additional paper in her own handwriting making disposition of personal property in which she took particular interest, and evidently desired should remain within the family, being bequeathed by special designation to various nephews and nieces, but the bulk of her estate was set aside for the benefit of her brother Claudius. After provision for the payment of her debts and the care of her grave, the entire residue was devoted to his use. Evidently she believed he was in need of special care and attention, as he was the object of her special thought and concern. She disposed of her entire property, except that set aside as above noted, by devising and bequeathing "all the balance and residue of my estate to my executor, hereinafter named, in trust for the following uses and purposes to wit: to pay the interest of the said sum so left in trust to him, and so much of the principal as he may deem right and proper, for the care, comfort and pressing necessities of my brother Claudius B. McKinstry, now residing in the State of Minnesota. And in making such payments, if in the opinion of my executor, the interests of my said brother are such, he should deem it

wise to make payment to another for the use of my said brother I do hereby authorize my executor to make such payments to such party and his receipt shall be a good and sufficient acquittance to and for such payments so made." There was no disposition of any balance or residue that might be remaining at the time of his death. Whether this provision was made because the brother was of bad or spendthrift habits, or of weak mentality, does not appear, but it is clear that the entire estate was to be devoted to the point of exhaustion for his benefit, except such portions as had been specially given to others. Here we find a direct gift of all the income, through the medium of a trustee, with the right on the part of the latter to use the principal sum, if necessary.

The trustee originally named died and another was substituted in his place, who acted until the death of Claudius, unmarried and without issue, in 1927. He left a will, upon which letters testamentary were granted, and an ancillary administrator was appointed to take possession of the assets in Franklin County. The latter claimed the fund remaining in the hands of the trustee of Mary McKinstry's will, asserting that the residue of that estate had vested in the decedent. The account filed, showing the balance, was referred to an auditor, who held the balance in the hands of the trustee was payable to the next of kin of Mary, finding an intention not to vest the residue of the estate in Claudius, but merely to permit the use of the income and such of the principal as was necessary for his proper support. As a result of this determination he awarded the amount remaining to the heirs at law, determined as of the date of Mary's death. The distribution was made on this theory, and the claim of the one representing Claudius was rejected. Exceptions were filed and overruled by the court. From its final decree this appeal was taken.

The question to be determined is the interest acquired by Claudius, or his representative, in the estate of his sister. After making provision for her debts and other

relations, it was her evident purpose that the residue be used for his benefit. The entire income was given to him through a trustee, and also the principal of the residue was directed to be used as might be thought right and proper for his support. For reasons best known to the testatrix these payments were, if necessary, to be made to third persons on his behalf, but that he was to have the benefit of the entire estate, principal as well as interest, is clearly evident. Mrs. McKinstry obviously contemplated there would be no residue if her desires were carried out; certainly she made no disposition of it, and made special provision, to the extent she saw fit, by specific bequests of such property as it was her wish her other kin should have.

Our authorities are clear that a decedent may impose limitations on the manner in which his estate shall be transferred, but this does not control the question as to whether the interest has been vested. Where there is doubt as to the construction of the particular bequest, the presumption is in favor of a holding that the entire fund has been definitely given to the beneficiary named: Smith's Est., 226 Pa. 304. "In cases of doubtful construction the law leans in favor of an absolute, rather than a defeasible estate; of a vested, rather than a contingent one; of the primary, rather than the secondary intent; of the first, rather than the second taker, as the principal object of the testator's bounty": Smith's App., 23 Pa. 9, 11. There is no legal objection to the creation of a trust for the protection of one whom the decedent desires to save from possible improvident conduct. In the present case, Claudius was to receive all of the income,—or it was to be used for him,—and such principal, as was necessary, was to be devoted to his support. Where there is an implied power to consume, there follows the right to dispose of the property, as the brother here did: Kidd's Est., 293 Pa. 21.

The rule is firmly established in Pennsylvania that a gift of the entire income of the estate, without express

provision for the disposition of any residue, results in the vesting of the estate in the one benefited: Wood's Est., 261 Pa. 480; Osborn's Est., 88 Pa. Superior Ct. 7. A gift of the income of a fund, without limitation as to time, is a gift in perpetuity and carries the fund itself: Roberts's App., 59 Pa. 70. There can be no doubt, in the present case, that Claudius was entitled to receive from the trustee all of the income, though certain discretion was lodged in the trustee in making use of the principal. Had the disposition of the interest received been made discretionary, a different rule would apply (Kelley's Est. (No. 1), 253 Pa. 466), but that is not the case now presented for our consideration. It will be noticed that the testatrix "gives" all the balance of her estate, a word which is significant in determining whether an absolute estate was intended: Sproul's App., 105 Pa. 438.

The wording of the will now before us is so closely identical with and so like that found in Millard's App., 87 Pa. 457, where the questions now involved were carefully considered, and the applicable legal principles so plainly set forth (on page 459), that a repetition would be of no value, and we content ourselves with referring thereto and adopting the language there used.

The learned auditor was of opinion that this authority was to be distinguished because the income was not given directly to the beneficiary, but passed through the hands of a trustee; however, the same was true in Millard's Estate, and we cannot approve of the attempted differentiation. The decision referred to has been later approved in Wood's Estate, supra, and Osborn's Estate, supra. Nor can we see any modification because of the authority given to the trustee to make payments, on behalf of Claudius, to third parties, if necessary; that was a natural direction if his physical or mental condition was impaired.

The auditor suggests that the payment through a trustee negatives the idea of an absolute gift, but the will as a whole shows an evident intention to give the entire

residuary estate to the brother who evidently was in need of protection. He was to have not only the interest, but the right to use the principal on his behalf was also conferred. The other next of kin had been specially remembered, and the testatrix had expressly stated the portion of her estate which she desired them to receive. As to the residue, the brother was the sole object of his sister's bounty. If she had contemplated the possibility of any balance remaining after his decease she could have directed what should be done with it. All of the residue was expressly devised and bequeathed, and it is evident that it was not her thought that the next of kin should receive any property other than that which she expressly declared should pass to them.

Concluding that the view taken is, under the authorities, the proper construction of the will, it follows that the balance in the hands of the trustee must be awarded to the ancillary administrator of Claudius, and ultimately distributed as directed by his will.

The judgment is therefore reversed, and the record is remitted so that distribution shall be made in accordance with the views herein expressed; the costs to be paid from the estate.