Estate of Annie E. McGovran, deceased.    Appeal of
Mary Frances Lehr.

190  375
195  453

*Wills—Exclusion of heir—Intestate laws.*

Testatrix directed as follows: "The rest and residue of my estate I direct to be distributed by my executor under the intestate laws of Pennsylvania, but in no event is M. or her three children and J. or her two children to receive any portion of my estate in any shape or form." *Held,* that the estate both real and personal passed to the persons entitled under the intestate laws, except that the persons mentioned by testatrix should be excluded in the distribution.

Argued March 9, 1899. Appeal, No. 98, Jan. T., 1899, by Mary Frances Lehr, from decree of O. C. Franklin Co., dis-

missing exceptions to auditor's amended report.  Before STEB-
RETT, C. J., GREEN, McCOLLUM, MITCHELL and FELL, JJ.
Affirmed.

Exceptions to auditor's report.

Annie E. McGovran died on October 16, A. D. 1896, hav-
ing first made her last will and testament in writing, dated
January 2, 1892, as follows:

"I, Annie E. McGovran, of the Borough of Chambersburg,
County of Franklin and State of Pennsylvania, being of sound
mind, memory and understanding, do hereby make, publish
and declare this to be my last will and testament, hereby revok-
ing and making void all former wills by me at any time made.

"As to such estate as it hath pleased God to me intrust I
dispose of as follows:

"Item.   I direct my Executor, hereinafter named, to pay all
my just debts and funeral expenses and I direct my Executor
to select a suitable monument for my lot in the Cemetery, not
to exceed the sum of Five Thousand Dollars.

"Item.   I give, devise and bequeath to the proper officers of
the Cedar Grove Cemetery Association, the sum of Three
Hundred Dollars, to be held in trust by the said officers or their
successors in office, to be invested in some good security, the
interest of which is to be expended in keeping of said burial
lot in good order.

"Item.   I give, devise and bequeath to Annie and Octavia
Moore, daughters of Philip Moore, Wheeling, West Va., Two
Thousand Dollars to each one, of the par value in the stock of
the Belmont Nail Co., of Wheeling, West Va.

"Item.   I give, devise and bequeath to George D. McDowell,
of Chambersburg, Pa., my Cumberland Valley Railroad stock.

"The rest and residue of my estate I direct to be distributed
by my Executor hereinafter named under the intestate laws of
Pennsylvania, but in no event is Mrs. Murdock, widow of Camp-
bell Murdock, or her three children, and Mrs. Kate Johnson, or
her two children, to receive any portion of my estate in any
shape or form."

To this she added a codicil dated April 30, 1894, as follows:

"Mrs. Mary Lehr or her heirs and the heirs of Boyd Martin
are not to receive any sum of money out of my estate in any

manner, shape or form.  The special legacy to Annie and Octavia Moore, daughters of Philip Moore, of Two Thousand Dollars, of stock of the Belmont Nail Co., Wheeling, West Va., is hereby revoked."

The auditor, W. Rush Gillam, held that the decedent died intestate as to her residuary estate, and that the same descended to and vested in her heirs at law, to wit: Louisa M. Murdock, Catharine R. Johnson, Philip H. Moore, Mary Frances Lehr, Mary Ann Loughborough, Margie Ann Symons, Matilda E. DeBow; that the children of Edmund P. Zane, being second cousins, do not inherit: Roger's Appeal, 131 Pa. 312.

In support of his report, the auditor filed the following opinion:

If the auditor had decided at first blush the legal question raised before him he would have concluded that the testatrix had made a testamentary disposition of the residue of her estate.  An investigation of the question, however, has forced us to the conclusion that she died intestate as to the residue of her estate.  In this we may be wrong.  If we are, however, we have consolation in the thought that we can easily be corrected without expense to the litigants.  The question, it seems to us, is very important, very interesting, and not free from doubt. We have given it our very best consideration, and have reached a conclusion after a most careful investigation.  This matter was argued before us at great length and with great ability on the part of those who contend that the residuary estate is disposed of by the will, as well as by those who contend otherwise. The auditor regards it as due, not only to himself, but to the parties as well, that he give his reasons for the conclusions which he has reached.  It has been well said that, "A case upon a will has no brother."  We recognize fully the principle of law that a will is to be construed according to the intention of the testator.  Looking at this will, it is apparent that the testatrix had no other intention in making the will than to provide for her burial and monument, give to her friend and counsellor her railroad stock, and disinherit certain of her heirs at law. The words which she uses in the will are, " The rest and residue of my estate I direct to be distributed by my executor hereinafter named under the intestate laws of Pennsylvania, but in

no event is Mrs. Murdock, widow of Campbell Murdock, or her three children, and Mrs. Kate Johnson or her two children, to receive any portion of my estate in any shape or form." Reading these words, studying them in every possible light, taking them in connection with the other parts of the will, we are forced to the conclusion that the testatrix has said nothing more than this: As to the residue of my estate I desire to die intestate, but in no event is Mrs. Murdock, widow of Campbell Murdock, or her three children, and Mrs. Kate Johnson and her two children, to receive any portion of my estate. If we are correct as to the meaning of the words used by the testatrix, then the matter is simple enough, for there is an unbending rule of law which is: "Mere negative words in a will are not sufficient to exclude the title of the heir, or next of kin. There must be an actual gift to some other definite object."

It is argued that the intention of the testatrix to disinherit Mrs. Murdock and Mrs. Johnson is so clearly expressed that we cannot allow them to participate in this distribution without a clear violation of the expressed intention. Granted, yet upon both reason and authority there must be more than an expressed intention to disinherit. There must be an actual gift to some other definite object.

It is clear that Louisa Rorer by her will intended to disinherit her brothers. She clearly so expressed it. Having failed, however, to designate the objects of her bounty it was held in a very able opinion by Judge ALLISON that they were not disinherited. See Will of Louisa Rorer, 7 Phila. 524. The case of Bender v. Dietrick, 7 W. & S. 284, is clearly in point. There, David Bender, the testator, provided by his will that his daughters should each have $50.00 out of his estate and no more. He did not say who should have the remainder of his estate. It is no more certain that Annie E. McGovran intended that Mrs. Loughborough and Philip H. Moore should have the whole of her residuary estate than it was that the two daughters of David Bender should have but $50.00 each. In that case it was held that the testator died intestate as to the residuary estate, and the daughters were allowed to participate. In the case of Coffman v. Coffman, 85 Va. 459, Hiram Coffman, the testator, used these words: "It is my will that my son William H. Coffman be excluded from all my estate

at my death." This was the substance of the whole will. It was held by the Supreme Court of Virginia that William H. Coffman was not disinherited. This case is also reported in 2 L. R. A. 848, as Coffman v. Heatnole. The Supreme Court of the United States, in Allen v. Allen, 18 How. 391, says: "In Pennsylvania the heirs must take unless they are disinherited by express words or necessary implication. Conjecture or uncertainty shall never disinherit him." In Clayton v. Clayton, 3 Binn. 476, Chief Justice TILGHMAN uses these words: "The rule of law gives the estate to the heir, unless the will take it from him, and in order to take it from him it must give it to some other person."

If we are correct in saying that the will of the decedent is the same as though the words, " I desire to die intestate as to the residue of my estate, and Mrs. Murdock and Mrs. Johnson, however, to have nothing," then it follows, as night follows day, that they are not disinherited. We have not referred to the codicil for the reason that if we are right as to our conclusions as to the will it necessarily follows that the codicil, in so far as it undertakes to disinherit Mrs. Lehr and the heirs of Boyd Martin, is inoperative.

Other adjudicated cases which have influenced us in reaching the conclusion we have, are: Hitchcock v. Hitchcock, 35 Pa. 393; Dunlap v. Ingram, 4 Jones's Equity (N. C.), 178; Luce v. Harris, 79 Pa. 432; Burnet v. Burnet, 30 N. J. Eq. 595; Graydon v. Graydon, 25 N. J. Eq. 561; Pugh v. Goodtitle, 3 Brown's Parliamentary Cases, 454; Hancock's Appeal, 112 Pa. 532; Howe's Appeal, 126 Pa. 233; Johnson v. Johnson, 4 Beavan's Reports, 318.

Mary Ann Loughborough and Philip H. Moore excepted to the distribution to Mary Frances Lehr, Louisa M. Murdock, Catherine Johnson, Elizabeth DeBow and Margie Ann Symons, each the sum of $6,072.17, contending that the auditor should have awarded nothing to any of the said parties, but that he should have awarded the whole residuary estate to the exceptants, they being the only heirs at law, or next of kin, of the testatrix entitled to participate therein under the provisions of the will and the codicil thereto.

STEWART, P. J., filed the following opinion:

A careful examination of the will, in the light of all that has been said by the learned auditor in support of his view, and by the respective counsel in the case, results in the following conclusions :

1. The direction that the executor should distribute the rest and residue of the estate, " under the intestate laws of Pennsylvania," is an immediate gift of such residuary estate.

2. The gift is to a class, to wit: those upon whom the law would cast the inheritance in case of intestacy; the time of distribution determining who are to take and the quantum of the gift to each, except that neither Mrs. Murdock, who otherwise would take, and her two children, who otherwise might take, are expressly excluded from participation.

3. Since the gift is to a class, no part of it fails by reason of the subsequent exclusion by codicil of certain others, who but for the exclusion would have taken.

4. The legacy to Annie and Octavia Moore, revoked by the codicil, falls into the residuary estate, and passes with it.

5. The exclusion of the parties named from the class indicated by the will and the revocation of the legacy have no other effect than to augment the shares of those participating in the residuary estate.

The case does not lend itself to the application of the rule invoked by the counsel for the excluded kindred of the testatrix, and applied by the auditor. The fact that the gift is to a class, the period of distribution to disclose the individuals and their respective shares, makes all inquiry as to the effect of merely negative words applied to some of the members of the class irrelevant.

It follows that the exceptions to the auditor's report must be sustained, and it is now, December 24, 1898, so ordered, and the report is referred back to the auditor for distribution in accordance with the views herein expressed. The exceptions filed on behalf of Elizabeth Zane, and Elizabeth Zane, guardian, are overruled.

Distribution was made by the auditor in accordance with the opinion of the court.

*Error assigned* was in dismissing exceptions to auditor's amended report.

———— *Sharpe*, of *Sharpe & Sharpe*, with him *Charles W. Russell*, for appellant.—Mere negative words are not sufficient to exclude the heir or next of kin; there must be an actual gift to some other definite object: Hitchcock v. Hitchcock, 35 Pa. 393; Craighead v. Given, 10 S. & R. 351; Johnson v. Johnson, 4 Beavan's Rep. 318; Bender v. Dietrick, 7 W. & S. 284; Rorer's Est., 7 Phila. 524.

From mere negative words of exclusion there arises no implication of a gift to the other next of kin: Coffman v. Coffman, 85 Va. 459; Crane v. Doty, 1 Ohio, 279; Dunlap v. Ingram, 4 Jones's Eq. 178.

The expression, "to be distributed under the intestate laws," is the usual and proper language in speaking of intestate estates or of an undisposed of residue: 1 Pepper & Lewis's Digest, 1522; Act of February 24, 1834, sec. 47; Hancock's App., 112 Pa. 532; Howe's App., 126 Pa. 233; Graydon v. Graydon, 25 N. J. Eq. 561; Burnet v. Burnet, 30 N. J. Eq. 595; Kinney v. Glasgow, 53 Pa. 141.

There is in this will no express devise of the real estate, and it is scarcely necessary to refer to the well-recognized rule that in the absence of an express devise the heir at law is not to be disinherited: Allen v. Allen, 18 Howard, 385; Faulstich's Est., 154 Pa. 188; Rupp v. Eberly, 79 Pa. 141; Cowles v. Cowles, 53 Pa. 175; France's Est., 75 Pa. 220.

*Gehr & Gehr* and *O. C. Bowers*, for appellees, were not heard, but in their printed brief said: The case does not lend itself to the application of the rule invoked by the counsel for the excluded kindred of the testatrix, and applied by the auditor: Lett v. Randall, 3 Smale & Giffard, 83; Bund v. Green, Law. Rep. 12 Chancery Div. 819; Vachell v. Breton, 5 Brown's Parliamentary Cases, 51; Bender v. Dietrick, 7 W. & S. 284.

PER CURIAM, March 20, 1899:

There was no error in confirming the auditor's report, as amended, and distributing the fund in accordance with the schedule annexed thereto. The decree is affirmed on the opinion of the learned president of the court below, and the appeal is dismissed at appellant's costs.