## Urie Estate

*Alexander Henry Carver*, for accountant.

*Clarence E. Hall*, for Marcella Kirk, legatee.

LEFEVER, J., February 21, 1952.—Mary N. Urie, who died September 27, 1908, by her holographic will, dated August 11, 1906, and duly probated, provided, inter alia:

"The income from my ⅓ interest in the W. Virginia lands of the J. Boulton Estate to be paid by Girard Trust Co. to Wm. R. Newbold; at his death it is to be divided between Ethel P. Newbold (his wife) & Elsie G. Newbold, at her death her portion of said income to be paid to Marcella Kirk & at the death Ethel P. Newbold her portion to be paid to the children of Albert Walter Newbold. . . ."

There are no further provisions in the will pertaining to the disposition of any of the above-mentioned property, income or principal; nor does the will contain any residuary clause. The above-quoted paragraph of the will contains no *express* gift of the principal, from which the income is derived, to anyone at anytime, not even a trustee. Nor does it contain any gift over of the income as provided for Marcella Kirk (named as successor to the share of income previously provided for Elsie G. Newbold after her death), nor gift over of that "portion" (income) to be paid to the "children of Albert Walter Newbold" (who are named as successors to the share of income previously provided for Ethel P. Newbold after her death). Moreover, insofar as the gifts in favor of Marcella Kirk and the "children of Albert Walter Newbold" are concerned, they are neither expressly nor impliedly "for life" but, in the absence of any named succeeding interests, are from all indications made without limitation of time.

The interest in the West Virginia lands referred to in the will as being "of the J. Boulton Estate" consists of an undivided share in a syndicate created among a group of Philadelphians in 1865 and reduced to a working trust agreement by indenture dated November 21, 1882. Under this indenture the trust is divided into 2,296 shares or interests. The estate of testatrix owns 76⅔ shares. The syndicate now owns about 20,000 acres of coal bearing land, and the income is largely coal royalties.

Girard Trust Company, mentioned in the above-quoted clause of the will of testatrix, formally renounced any right to act as trustee, and Provident Trust Company of Philadelphia was appointed trustee and has administered the trust created in the foregoing paragraph. It paid the income to William R. Newbold until his death and thereafter paid the income in equal shares to Ethel P. Newbold (who still survives), and Elsie G. Newbold, or her assignees, until the latter's death on March 4, 1951.

At the audit there was presented the question as to whether Marcella Kirk is entitled to receive the income from one half the trust during her lifetime with an intestacy as to the principal at her death, or whether she is now entitled to receive the principal of one half the trust, since the will provides no gift over of either income or principal at the death of Marcella Kirk.

"An absolute gift of income without limitation of time or amount is a bequest of the corpus of the fund from which said income is derived: Thompson Trust, 348 Pa. 228, 35 A. 2d 261; Emmerich's Estate, 347 Pa. 307, 32 A. 2d 400; Bosworth's Estate, 337 Pa. 265, 11 A. 2d 140; Gibbons' Estate, 317 Pa. 465, 177 A. 50; McKinstry's Estate, 296 Pa. 185, 145 A. 806": Carmany Estate, 357 Pa. 296, 300 (1947). "There exists a well established rule of construction that a gift of income, interest or profits without limitation as to time constitutes a gift of the fee itself. . . . However, as we pointed out in Gibbons' Estate, supra [317 Pa. 465] at 468, the rule does not apply where the instrument evidences an intent *not* to pass a fee. Such *contrary intent* is held to be disclosed when (a) the gift is for a limited period (b) the trustee has active duties to perform (c) anything exists to indicate a contrary intention": Thompson Trust, 348 Pa. 228, 230 and 231 (1944).

The instant case falls squarely within the rule stated above and none of the exceptions apply. A contrary intent is not here disclosed because: (a) No time is specified during which income is to be paid to Marcella Kirk; therefore, the gift is not for a limited period; (b) the trustee's only duty is to pay income to the life tenant as it is received from the syndicate holding the West Virginia land; therefore, the trustee has no other duties; and (c) there is nothing in the will to indicate an intention other than that Marcella Kirk is to receive the fee. The auditing judge is of the opinion, therefore, that Marcella Kirk (now Simpson), is entitled to immediate distribution of the corpus of one half of the principal of the fund now before the court, and one half of the interest of testatrix in the West Virginia lands of the J. Boulton estate referred to in her will. Awards will be so made.

As stated above, the interest which testatrix has in the West Virginia land of the J. Boulton estate was in the form of shares in a syndicate. Such an interest is in effect personal property. Consequently, this court has jurisdiction thereover.

The auditing judge is fortified in the conclusion here reached, in that full notice of the supplemental hearing in this case, which was held on January 9, 1952, was given to all persons who would be entitled to share in this estate in the event there were an intestacy. The notice stated the claim of Marcella Kirk Simpson and invited the heirs to appear and present evidence or argument against it, if they saw fit to do so. No one appeared at the hearing to controvert the position taken by Marcella Kirk Simpson. It is to be assumed, therefore, that no one in interest opposed the disposition of the one half of the principal, as claimed by Marcella Kirk Simpson, and as here adjudicated.
. . .

470

And now, to wit, February 21, 1952, the account is confirmed nisi.